IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNION UNIVERSITY,

     Plaintiff,

v.                                                                     No. 1:20-cv-01254-JDB-jay

EVANSTON INSURANCE CO.,

     Defendant.

_____

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
DENYING IN PART, GRANTING IN PART, AND HOLDING IN ABEYANCE IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;
AND
DIRECTING PLAINTIFF TO REFILE DOCKET ENTRY 64

_____

*INTRODUCTION*

This action involves a dispute over two successive insurance policies issued by the Defendant, Evanston Insurance Company ("Evanston"), to Plaintiff, Union University ("Union"). Union alleged in its original complaint that Evanston breached the initial policy by failing and refusing to provide a defense and indemnity thereunder. (Docket Entry ("D.E.") 1.) In its responsive pleading, Evanston asserted a counterclaim seeking a declaratory judgment regarding coverage. (D.E. 12.) In its answer to the counterclaim, Union pleaded certain affirmative defenses, including estoppel. (D.E. 15.) The complaint was subsequently amended to add a bad faith claim and the second policy. (D.E. 19, 48.) Before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (D.E. 58, 60.) The motions have been fully briefed and are ripe for disposition.

*JURISDICTION AND CHOICE OF LAW*

A federal court has an independent obligation to consider whether it has subject matter jurisdiction over a case pending before it and may do so *sua sponte*. *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1011 (6th Cir. 2018). As courts of limited jurisdiction, the federal courts have "only the authority to decide cases that the Constitution and Congress have empowered them to resolve." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008) (per curiam). Title 28 U.S.C. § 1332 bestows the federal courts with original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). According to the pleadings, Union is a non-profit religious organization with its principal office located in Jackson, Tennessee, and Evanston is an Illinois corporation with its principal place of business in Illinois. The initial complaint sought $500,000 in both compensatory and punitive damages. In "diversity cases, the general rule is that the amount claimed by a plaintiff in [its] complaint determines the amount in controversy." *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 469 (6th Cir. 2019) (quoting *Rosen v. Chrysler Corp.*, 205 F.3d 918, 920-21 (6th Cir. 2000)) (brackets omitted). The Court finds that it has original jurisdiction over this action.

In diversity cases, a federal district court is to apply the substantive law of the forum state. *Hackney v. Lincoln Nat'l Fire Ins. Co.*, 657 F. App'x 563, 570 (6th Cir. 2016) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties do not dispute that Tennessee law governs the instant case.

*STANDARD OF REVIEW ON SUMMARY JUDGMENT GENERALLY*

Rule 56 provides in relevant part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual issue is genuinely in dispute if a reasonable factfinder could resolve it either way." *Jordan v. Howard*, 987 F.3d 537, 542 (6th Cir. 2021), *reh'g en banc denied* (Mar. 8, 2021). "In determining whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-55 (1986)) (internal quotation marks omitted). To escape summary judgment, the nonmovant "must show that there is more than 'some metaphysical doubt as to material facts.'" *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 954 F.3d 852, 859 (6th Cir. 2020) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), *reh'g en banc denied* (July 1, 2020). "The moving party is entitled to summary judgment when the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (internal quotation marks omitted). "It is not the Court's role to research or construct legal or factual arguments on behalf of either party, nor is it appropriate to do so." *Grover v. BMW of N. Am., LLC*, ___ F. Supp. 3d ___, 2022 WL 204925, at *15 (N.D. Ohio Jan. 24, 2022).

The standard for reviewing cross-motions for summary judgment is no different. *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 441 (6th Cir. 2021). That is, "a case involving cross-motions for summary judgment requires evaluating each party's motion on its own merits, taking

care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* at 442 (quoting *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019)) (brackets and internal quotation marks omitted).

*PRELIMINARY MATTERS*

As noted above, this case involves two successive insurance policies, one with effective dates of August 31, 2017, through August 31, 2018, (the "2017-18 Policy") and the other with an effective period from August 31, 2018, to August 31, 2019, (the "2018-19 Policy"). In its response to Defendant's motion for summary judgment, Union agrees that no coverage is available under the 2017-18 Policy. Accordingly, Evanston's motion for summary judgment is GRANTED as to that contract. For the balance of the Court's discussion herein, the remaining 2018-19 Policy will be referred to simply as the "Policy." The Plaintiff further concedes that the Policy did not cover an award of attorneys' fees to a third party such as VUMC. Thus, Evanston's motion for summary judgment is also GRANTED on that issue.

In addition, the Court must address certain procedural issues. The parties filed cross-motions for summary judgment in April and May 2021. (D.E. 28, 33.) Attached to its response to Evanston's initial motion for summary judgment were Union's responses to Defendant's statement of material facts. (D.E. 45-3.) Following the filing of Union's second amended complaint, the Court, in an order entered July 30, 2021, denied the dispositive motions, which were still pending at the time the second amended pleading was filed, as moot, as "an amended complaint supersedes an earlier complaint for all purposes." (D.E. 51 at PageID 707 (brackets omitted).)

Evanston's renewed and currently pending motion for summary judgment was filed on November 4, 2021. In its responsive brief filed December 9, 2021, Union stated that "Plaintiff

relies upon its responses to Defendant's Statement of Material Undisputed Facts along with its Statement of Additional Undisputed Facts as if incorporated herein pursuant to Rule 56 of the Federal Rules of Civil Procedure." (D.E. 63 at PageID 2265.) However, while a statement of additional material undisputed facts was contemporaneously filed (*see* D.E. 64), the docket does not reflect the filing of a response to Defendant's renewed statement of material facts. Evanston, in its reply, pointed out the omission and argued that the Court should find its statement of facts to be undisputed for purposes of summary judgment. Plaintiff's counsel filed the missing responses on January 20, 2022 (D.E. 69), offering no explanation for the late filing.

Motions for summary judgment are governed by LR 56.1 of the local rules of this district, which sets forth the requirements for briefing such motions. The rule requires that responses to motions for summary judgment be filed within twenty-eight days after the motion is served. LR 56.1(b). It further provides in pertinent part that "[f]ailure to respond to a moving party's statement of material facts . . . within the time periods provided by [the rule] shall indicate that the asserted facts are not disputed for purposes of summary judgment." LR 56.1(d). This Court expects lawyers practicing before it to make filings according to the local rules and has on many prior occasions invoked LR 56.1(d) for attorneys' failures to do so. Although it could find that Union's untimely January 20, 2022, filing renders the statement of facts undisputed, the Court will not do so on this occasion.

Moreover, the Court notes that Plaintiff's statement of additional material undisputed facts ran ten pages in length. (D.E. 64.) In its reply, Defendant objected to the filing on the grounds that it violated LR 56.1's prohibition of statements of additional facts exceeding five pages absent prior court approval. LR 56.1(b) ("A non-movant's statement of additional facts shall not exceed 5 pages without prior Court approval."). There is nothing on the docket indicating that Union's

counsel requested or obtained prior approval of the Court to exceed the page limit for its statement of additional facts. Evanston also complains that the "additional facts" are duplicates of statements of fact submitted by Union in support of its renewed motion for summary judgment, with the exception of those numbered 35 through 37 which appear on pages 9 and 10 of the filing. Plaintiff's counsel made no effort thereafter to cure his error or to address Defendant's assertion. While the Court could strike D.E. 64 in its entirety for failure to comply with the local rule, it will DIRECT Plaintiff to refile the document, omitting therefrom statements of additional facts numbered 35 through 37 within ten days of the entry of this order. It will not be necessary for Defendant to refile its responses.

*UNDISPUTED MATERIAL FACTS*

The following facts are undisputed for purposes of summary judgment unless otherwise noted. Union, a liberal arts university, maintains and operates a college of nursing that offers students the opportunity to train and seek employment as certified registered nurse anesthetists. Nurse anesthesia students are required to complete a clinical residency program as part of their academic requirements.

In March 2009, Union entered into an agreement (the "Agreement") with Vanderbilt University through its school of medicine ("VUMC") under which Union provided student registered nurse anesthetists ("SRNAs") to VUMC for clinical rotations. Among other things, the Agreement provided that Union "will indemnify, defend, and hold harmless Vanderbilt . . . from and against any and all liabilities and claims of liability arising out of or in any way connected with the negligent acts and omissions of [Union], its employees, its agents, or STUDENTS from [Union] assigned to VANDERBILT under [the] Agreement." (D.E. 12-1 at PageID 85.) The

Policy issued by Evanston to Union covered professional services, including "Student Nurse Anesthetist Services." (D.E. 60-5.)

On January 25, 2018, patient Suresh Ghodasara underwent surgery at VUMC for squamous cell carcinoma. Within a day of the procedure, he developed early signs of sepsis and, as a result, doctors returned him to the operating room on January 28 in an attempt at treatment. Margaret Whitehead, one of Union's SRNAs, was in the operating room with the attending anesthesia physician, Dr. Edward Sherwood, at the time of the surgery. While attempting to keep Ghodasara's blood pressure stable, Whitehead administered labetalol, a blood pressure reducing drug, instead of vasopressin, which increases blood pressure. His blood pressure dropped to a point that CPR was needed to restart his heart. Ghodasara died three days later.[1]

In a letter addressed to Union's nurse anesthesia program director dated March 1, 2018, Diane Moat, director of clinical risk management for VUMC, advised of the January 28 incident pursuant to the Agreement's indemnity provision. (D.E. 60-8.) The letter was received and reviewed by Dr. Molly Wright, who was in charge of Union's clinical externship program at the time and was familiar with the indemnity agreement. Dr. Wright did not advise Union Vice President of Business Affairs Gary L. Carter, the person responsible for insurance matters for the university, of the incident or the Moat letter. Although it was something he should have seen because of its potential impact on the school's insurance coverage, Carter did not see the Moat letter until "sometime in 2019." (D.E. 69 at PageID 3003.)

Carter never had contact with any attorney representing Ghodasara's family and was unaware of any direct demand by the family to Union. Between August 31, 2017, and August 31,

---

[1]It appears to be unknown whether Ghodasara's death resulted directly from any acts or omissions of Whitehead.

2018, Union did not put Evanston on notice of a potential claim related to any acts or omissions of Whitehead or to a demand by VUMC for indemnification under the Agreement in connection with such acts or omissions.

In April 2019, Union was notified by VUMC's counsel, Thomas Wiseman, of a potential lawsuit. On April 30, 2019, Union notified Evanston of the Whitehead incident. In a letter to Union dated May 8, 2019, acknowledging receipt of the notification, Markel Service, Inc., Evanston's claims service manager, advised the insured that the matter had been assigned to Jeffrey Finley, one of its claims professionals. The letter also stated:

> This letter does not address the availability, if any, of insurance coverage or benefits under the [Policy] or any other policy. Nothing in this letter shall be construed as a waiver of any of the rights or defenses that Evanston Insurance Company may have under the [P]olicy, nor as an admission of any liability whatsoever of Evanston Insurance Company. Evanston Insurance Company reserves all rights under the [P]olicy, at law, or in equity, including the right to disclaim coverage in whole or in part.

(D.E. 60-6.) At the time this letter was generated, Evanston was aware of specific potential coverage issues related to contractual indemnity and the lack of a "claim" as that term was defined in the Policy. The following day, Finley notified Carter that he would "close this matter for now." (D.E. 59-1 at PageID 1661.)

During the period from May until late August of 2019, Carter and Finley had various conversations. Carter understood from these conversations that there was a coverage issue due to the contractual indemnification demand by VUMC. In July 2019, Wiseman emailed Finley purporting to forward a "settlement demand letter" received by VUMC from Ghodasara's family. Evanston challenges the letter's characterization as a "demand." In August 2019, Finley sent a letter, on which Union was copied, to Attorney Kent Krause retaining him to represent Union.

On or about August 7, 2019, the Ghodasara family's lawyer, William L. Bomar, emailed multiple individuals, including Finley and Wiseman, concerning a mediation set for September 4, 2019. The email read in pertinent part that

> [t]he anticipated named defendant will be Vanderbilt University Medical Center represented by Tom Wiseman. There is an issue regarding the actions of a student nurse anesthetist from Union University in Jackson, Tennessee.

(D.E. 59-1 at PageID 1667.)

On approximately August 16, 2019, Finley emailed Krause, forwarding to him a communication from Wiseman to Finley regarding a letter dated June 6, 2018. The August 16, 2019, email did not reflect that Union was copied thereon.

Finley communicated with Carter by telephone and email on August 26, 2019. The email stated in relevant part as follows:

> [W]e will most likely be sending you a letter denying coverage of the claim by Vanderbilt. The claim, as made by Vanderbilt, is made under the terms of their contract with you. Mr. Wiseman, on behalf of Vanderbilt, has forwarded me copies of their contract and asked for us to participate in their settlement of the Ghodasara claim against them. I believe that they are meeting with Ghodasara's counsel on September 4, 2019. Even though the statute of limitations has lapsed as to the claims by Ghodasara, Vanderbilt, on its own behalf, entered a tolling agreement with the Ghodasaras to keep the claim alive past the expiration of the statute of limitations. I can offer no reason as to why Vanderbilt did so, but it is binding only upon Vanderbilt.
>
> It should be noted that Mr. Ghodasara died on January 31, 2018. The statute of limitations in Tennessee for a medical malpractice claim is one year, which means that the statute of limitations expired on January 31, 2019 as to any claims by Plaintiff against Union and Nurse Whitehead. In the event that Mr. Ghodasara's family files suit against Union University or Nurse Whitehead, or Vanderbilt names Union and Ms. Whitehead as non-parties a[t] fault, and then Ghodasara's family seeks to bring in Union and Ms. Whitehead, then Evanston and Markel will evaluate their position at that time and their obligations to provide a defense.
>
> However, as of now, it appears that we will be declining coverage for the claims made by Vanderbilt. . . .

I anticipate that we will be forwarding a formal letter to you shortly confirming our position.

(D.E. 59-1 at PageID 1626.)  Later that same day, Finley sent Carter a second email stating:

As we discussed earlier today, and as supplement to my email of a few minutes ago, I wanted to clarify that Kent Krause, and his law firm Brewer, Krause, Brooks & Chastain, PLLC, as retained by us to defend this matter, will be taking no further action on your behalf and are not representing Union University and Nurse Whitehead as of now.  I have asked Mr. Krause to hold his file open in the event of a change of circumstance, but for now, he has been instructed to stop any further work on this matter.

(*Id.* at PageID 1681.)

On September 3, 2019, Finley advised the mediator, Bomar, and Wiseman that Evanston would not be attending the mediation set for the following day, as "all of [the] claims against Union and Margaret Whitehead have expired and there are no viable claims against them as it now stands."  (D.E. 65-1 at PageID 2955.)  The mediation proceeded as scheduled on September 4, 2019, during which VUMC entered into a settlement with the Ghodasara family.  Union did not attend the mediation or pay any funds toward the settlement.  Neither Union nor Whitehead have been sued by Ghodasara's family and a judgment has never been taken against them for Whitehead's acts or omissions.  VUMC sent a letter to Union on September 3, 2020, demanding that, pursuant to the Agreement, Plaintiff indemnify it in the amount of $384,937.47, which included the total of the settlement payment to Ghodasara's family plus attorneys' fees, costs, and expenses.  (D.E. 60-10 at PageID 2178-79.)

*ARGUMENTS OF THE PARTIES AND ANALYSIS*

*Estoppel*

In seeking summary judgment in its favor, Union contends that Evanston is estopped from asserting coverage defenses.  As referenced above, estoppel was raised by Plaintiff as an affirmative defense to Evanston's counterclaim.  In Tennessee, the party asserting an affirmative

defense bears the burden of proving it.[2] *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 284 (6th Cir. 2018).  "In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)) (internal quotation marks omitted); *see Evans v. Walgreen Co.*, 813 F. Supp. 2d 897, 916 (W.D. Tenn. 2011) ("[W]here the moving party has the burden—the plaintiff on a claim for relief or [a party] on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.").  If that burden is successfully carried, the nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Rounds v. Phil's Kar Kare*, Case No. 16-13170, 2018 WL 1089597, at *4 (E.D. Mich. Feb. 26, 2018) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).

The Court begins with the observation that estoppel is disfavored in Tennessee.  *Bokor v. Holder*, 722 S.W.2d 676, 680 (Tenn. Ct. App. 1986); *see also Corrington v. Equitable Life Assurance Soc'y of the U.S.*, No. 01-2446-M1/A, 2003 WL 23846662, at *2 (W.D. Tenn. May 15, 2003).  State law holds that "an insurer is estopped to deny coverage where it has taken charge of and conducted the defense of the claims asserted against the insured, without having reserved its rights by some form of agreement, stipulation, or notice." *Knox-Tenn Rental Co. v. Home Ins. Co.*, 2 F.3d 678, 681 (6th Cir. 1993) (quoting *Am. Home Assurance Co. v. Ozburn-Hessey Storage Co.*, 817 S.W.2d 672 (Tenn. 1991)); *see also Hardware Mut. Cas. Co. v. Higgason*, 134 S.W.2d

---

[2]"[T]he burden of proof on [an] affirmative defense is determined by state law in diversity cases."  Fundamentals of Litigation Practice § 10:9 (2021 ed.).

169, 175 (Tenn. 1939) ("An indemnity insurer will not be estopped to set up the defense that the insured's loss was not covered by the contract of indemnity, by the fact that the insurer participated in the action against the insured, if, at the same time, it gives notice to the insured that it does not waive the benefit of such defense."). "An insurance company's reservation of rights is sufficient only if it 'fairly informs the insured of the insurer's position.'" *Am. & Foreign Ins. Co., Inc. v. Sequatchie Concrete Servs., Inc.*, 441 F.3d 341, 347 (6th Cir. 2006) (quoting *Transam. Ins. Grp. v. Beem*, 652 F.2d 663, 666 (6th Cir. 1981)). However, "it is not required that the reason given for the insurer's position be legally correct. The position taken may be correct, but for other legal reasons." *Richards Mfg. Co. v. Great Am. Ins. Co.*, 773 S.W.2d 916, 919 (Tenn. Ct. App. 1988); *see Starr Indem. & Liab. Co. v. i3 Verticals, LLC*, Case No. 3:16-cv-2832, 2018 WL 5266588, at *4 (M.D. Tenn. Oct. 23, 2018) ("Tennessee courts have rejected a requirement that insurers reserve individual bases for denials of coverage[,]" citing *Richards Mfg.*). "Definite [n]otice must be conveyed to the insured that the insurer is not waiving its right to deny liability under the policy." *Knox-Tenn Rental Co. v. Home Ins. Co.*, 833 F. Supp. 665, 668 (E.D. Tenn. 1992), *aff'd*, 2 F.3d 678 (6th Cir. 1993).

Plaintiff asserts that, when an insurer provides only a "generic" reservation of rights letter, with no citations to the policy terms on which it is investigating and provides a defense for some time to its insured, the insurer is estopped from asserting its coverage defenses. Union does not provide a direct citation for this statement. Rather, it proceeds with a discussion of two rulings—a federal case interpreting Tennessee law and a state decision—to prove its point: *Beem* and *Richards Manufacturing*. Upon close inspection, however, this Court is unconvinced that either case supports the application of estoppel in this case.

In the former, Stephen Beem, a young attorney, purchased a homeowner's policy issued by Transamerica, which required that the insured "give notice to the company, 'as soon as practicable' of any event which might give rise to a covered liability claim against the insured." *Beem*, 652 F.2d at 664.  On November 13, 1976, Beem accidentally shot his friend and hunting companion, William Booth, while the two were hunting, leaving Booth severely injured.  *Id.* at 664, 668.  Beem failed to give notice to Transamerica for nearly a year, even though he was in constant communication with Booth and knew the extent of his injuries, because he was unaware the injuries might be covered under his homeowner's policy.  *Id.* at 664.  When Booth's lawyer advised him of his intention to sue in state court, Beem learned from a law partner that there might be relevant coverage under the policy.  *Id.*  He promptly notified his insurer of the accident and potential claim.  *Id.*  The insurance adjuster met with Beem on November 18, 1977, and obtained his signature on a non-waiver agreement, which stated as follows:

> IT IS HEREBY UNDERSTOOD AND AGREED by and between the parties signing this agreement, that any action taken by the hereinafter named Insurance Company or Companies *in investigating the cause of loss, or investigating and ascertaining the amount of sound value, or the amount of loss and damage which occurred on 11-13-76* shall not waive or invalidate any rights whatever of either of the parties to this agreement.

> IT IS FURTHER UNDERSTOOD AND AGREED that neither the examination of the insured or of any other person, the examination of the books of account, bills, invoices, or other vouchers of the insurer or any other person, the request of any other information, or the furnishing thereof, or the insuring of any trouble or expense by the insured shall waive or invalidate any of the terms and conditions of the policy or policies, or any defense thereunder.

> THE INTENT of this agreement is to preserve the rights of all parties hereto, and *to permit an investigation of the cause of loss, the investigation and ascertainment of the amount of sound value, or the amount of loss and damage, or any of them* without regard to the liability of the hereinafter named Insurance Company or Companies.

*Id.* at 664-65 (emphasis added).

13

Thereafter, the insurer not only conducted an investigation, but went further, retaining a law firm that, over a period of some nine months, filed an answer in the state court action and entered into serious settlement negotiations with Booth. *Id.* at 665-66. Beem heard nothing more from the insurer relative to any reservation of rights or that it was relying on a defense of untimely notice until it filed a declaratory judgment action in federal court in August 1978. *Id.*

On appeal, the Sixth Circuit was tasked with determining how the Tennessee state courts would analyze an issue the state bench had not yet faced—whether an insurer could estop itself from relying on a reservation of rights by exceeding its terms. *Id.* at 666. The appellate court answered that question in the affirmative, opining that, by taking actions beyond the non-waiver agreement's reservation of rights only as to investigation, the insurer "waived its rights, or estopped itself from relying on its policy defense or the non-waiver agreement." *Id.*

Although Union insists that this matter "falls squarely within" *Beem* (D.E. 58-1 at PageID 1387), the case is easily distinguishable. Transamerica expressly notified Beem of its reservation of rights only as to investigation. Here, Evanston's reservation of rights was not limited to simply an investigation of any potential claim and, indeed, the Plaintiff does not so contend. Also, Union points out that Transamerica's non-waiver agreement was never updated, that a separate reservation of rights letter was never sent to Beem, and that the non-waiver agreement failed to explain what the potential coverage issues were upon which the reservation of rights was based. However, the *Beem* court did not rule that any such actions by the insurer were necessarily required.

*Richards Manufacturing* came before the Tennessee Court of Appeals some seven years after the Sixth Circuit rendered its *Beem* decision. In *Richards Manufacturing*, a tort claim was brought against the insured in a California state court. *Richards Mfg.*, 773 S.W.2d at 921.

Questions arose between the insured and its insurer as to coverage and representation, prompting

the insurance company to issue a letter stating in pertinent part, as cited by the court, that:

> The policies of insurance issued to your company . . . would not provide coverage
> for any Award of punitive or exemplary damages.  Therefore, any participation by
> [the insurer] in this matter is undertaken with the express understanding that [the
> insurer] will not be responsible for any Award of exemplary or punitive damages
> which might be rendered in this matter.

> The purpose of this letter therefore, is to confirm that this company will undertake
> the defense of this matter . . ., however we will not be responsible for any Award
> of punitive or exemplary damages.

*Id.* at 918 (ellipses omitted).

Throughout the California litigation, the insurer took the position with its insured that it

was, on the other hand, liable for compensatory damages that might be awarded against the insured

up to the policy limit.  *Id.*  In its initial answer in a declaratory judgment action later filed in

Tennessee state court, the insurer admitted liability for a compensatory damage award issued by

the California court.  *Id.*  However, after the California Court of Appeals affirmed the California

trial court's judgment, the insurer sought to amend its answer in the Tennessee case to deny any

liability under the policy, for compensatory damages or otherwise.  *Id.*

The Tennessee Court of Appeals characterized the question before it thusly:  "we must

decide whether or not the notice given by the insurer to the insured [was] sufficient or proper notice

to constitute a . . . reservation of rights agreement and if it [was], [did] such agreement prevent the

insurer from raising . . . a defense to its liability in [the] declaratory judgment action."  *Id.* at 919.

The appellate court first articulated that "[w]e think it beyond doubt that the insurer in this case

fairly advised the insured of its position regarding punitive damages."  *Id.*  As for compensatory

damages, the court held that

> the insurer is estopped to contest its liability for that portion of the California
> judgment representing such award.  There was a total failure on the part of the

insurer to reserve any question regarding [a] compensatory damage award.  In fact, not only did it not reserve, but it expressly advised the insured that it concluded that it was liable for the compensatory damage award.

*Id.*

Richards Manufacturing, like *Beem*, is distinguishable from the matter at bar.  In *Richards Manufacturing*, the insurer's missive as quoted by the court addressed only one issue—a punitive damages award—without mentioning the issue of compensatory damages in any manner.  By contrast, Evanston's letter to Union reserved rights as to *all* claims.  The *Richards Manufacturing* court gave no indication that a reservation of rights of all rights was insufficient.  Moreover, Union has offered no evidence that Evanston, as did the insurer in *Richards Manufacturing*, ever advised Plaintiff that it was liable under the Policy.

Union goes on to argue that "once [the insurer's] investigation commences and circumstances change such that legitimate coverage issues are uncovered, the insurer *should* update its reservation of rights within a reasonable time to adequately put its insured on notice of potential problems" (D.E. 58-1 at PageID 1386 (emphasis added)) and suggests that Evanston's failure to do so amounted to no reservation of rights at all.  But Union offers no supporting citation to case law for this contention and neither *Beem* nor *Richards Manufacturing* so hold.[3]  In any case, as previously noted, is it undisputed that Finley advised Carter in conversations spanning the period from early May to August 2019 that a coverage issue existed due to the contractual indemnification demand by VUMC.

The cited cases also do not define a "generic" reservation of rights.  Although Plaintiff correctly observes that Evanston's reservation of rights did not include "the slightest explanation"

---

[3]Indeed, by using the word "should," Plaintiff appears to recognize the lack of any solid support for its position.

(*id.*) of what was intended to be reserved or the policy provisions it considered problematic, the decisions relied upon do not require that a reservation of rights do so.  Union argues that its insurer failed to keep it "adequate apprised of its coverage position" (*id.* at PageID 1389), presumably with periodic updates, but cites to no case law that supports this assertion or that would instruct the Court as to how often such updates must occur.  Union also complains that Evanston's reasons for deciding to deny the claim were incorrect.  As noted herein, *Richards Manufacturing* explicitly rejected this notion when it ruled that "it is not required that the reason given for the insurer's position be legally correct.  The position taken may be correct, but for other legal reasons." *Richards Mfg. Co.*, 773 S.W.2d at 919.

Thus, the Court finds that Plaintiff has failed to meet its burden of establishing that it is entitled to judgment as a matter of law on its estoppel claim.  Accordingly, Union's motion for summary judgment is DENIED with respect thereto.

*Coverage of any Potential Claim by Ghodasara's Family Under the Policy*

Plaintiff also seeks summary judgment in its favor on the issue of whether coverage was triggered under the Policy with respect to a direct claim by the Ghodasara family.  Defendant's motion for summary judgment touches on this issue as well.

Insurance policies are, at bottom, contracts.  *Johnson & Assoc., LLC v. Hanover Ins. Grp., Inc.*, 572 S.W.3d 636, 642 (Tenn. Ct. App. 2018), *appeal denied* (Dec. 5, 2018).  Thus, the courts are to construe them "in the same manner as any other contract."  *Lammert v. Auto-Owners (Mut.) Ins. Co.*, 572 S.W.3d 170, 172-73 (Tenn. 2019) (quoting *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000)).  "Questions relating to the interpretation of written contracts involve legal rather than factual issues."  *Johnson & Assoc.*, 572 S.W.3d at 642.  "[T]he contractual terms should be given their plain and ordinary meaning, for the primary rule of contract

interpretation is to ascertain and give effect to the intent of the parties." *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012) (quoting *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386-87 (Tenn. 2009)) (internal quotation marks omitted). It is axiomatic in Tennessee that, "when the contractual language of an agreement is clear and unambiguous, the literal meaning controls the outcome of the dispute." *Moorehead v. Tenn. Farmers Mut. Ins. Co.*, No. M2020-01319-COA-R3-CV, 2021 WL 2935454, at *4 (Tenn. Ct. App. July 13, 2021) (citing cases).

However, "[i]f a policy provision can be interpreted in more than one way, it is ambiguous." *Am. Guarantee & Liab. Ins. Co. v. Norfolk S. Ry. Co.*, 278 F. Supp. 3d 1025, 1037 (E.D. Tenn. 2017). "[A]mbiguous terms that limit coverage are construed against the insurer in favor of the insured." *Id.* at 1038. "If a contract remains ambiguous following application of Tennessee's rules of construction, interpretation of the contract shifts to the factfinder." *Grange Ins. Co. v. Steve Tolley & Pam Nelson Joint Venture*, ___ F. Supp. 3d ___, 2021 WL 2815884, at *6 (E.D. Tenn. July 6, 2021), *appeal filed* (6th Cir. July 9, 2021) (No. 21-5663).

In the Policy, the term "claim" is defined as "the Insured's receipt of . . . [a] written demand for Damages or Professional Services; or . . . [t]he service of suit or institution of arbitration proceedings against the Insured seeking Damages." (D.E. 60-5.) "Damages" means "the monetary portion of any judgment, award or settlement[.]" (*Id.*)

Union avers that the Ghodasara family made a direct claim against it for monetary damages that was separate and independent from any claim made by VUMC for indemnity under the Agreement. The insured contends that it (Union) was put on notice of a potential suit by the Ghodasaras in April 2019. By failing to attend the mediation on this "true claim," the argument goes, Evanston created a situation in which the insurer could deny coverage under a Policy

exclusion relating to the Agreement.  The Ghodasaras' claim, Union posits, is evidenced by an email sent by Bomar to Finley on September 3, 2019, which stated:

> Mr. Finley—please rest assured when we file suit against Vanderbilt and it asserts fault on Ms. Whitehead we will amend the complaint to name Ms. Whitehead and the school under T[ennessee] C[ode] A[nnotated] [§] 20-1-119 and it will be timely under the statute of limitations.  I guess your insured['s] interests are not a priority.  This matter is in tort and your efforts "to sit it out" and force Vanderbilt to claim or sue in indemnity (under contract and presumably attempt to call coverage into question) seems to not be in the insured['s] interests.  We trust you have advised your insureds of this position.

(D.E. 30-15.)

For its part, Evanston accuses Union of miscasting this case as based upon a claim by the Ghodasaras in order to avoid certain Policy terms, and vehemently argues that any evidence offered by the Plaintiff does not fit the Policy definition of a claim.  Upon review of the briefs and the record, it is the determination of the Court that questions of fact exist with respect to this issue.  The parties' motions as to whether coverage was triggered under the Policy as to any claim by the Ghodasaras will be DENIED.

### Known Loss/Loss-in-Progress Doctrine

In its dispositive motion, Defendant argues that the extra-contractual known loss/loss-in-progress doctrine bars coverage.  The doctrine precludes coverage "where the insured is aware of a threat of loss so immediate that it might fairly be said that the loss was in progress and that the insured knew it at the time the policy was issued or applied for."  *Sequatchie Concrete Servs.*, 441 F.3d at 343 (quoting *Inland Waters Pollution Control, Inc. v. Nat'l Union Fire Ins. Co.*, 997 F.2d 172, 178-79 (6th Cir. 1993)).  The doctrine "embodies the principle that losses which exist at the time of the insuring agreement, or which are so probable or imminent that there is insufficient risk being transferred between the insured and the insurer, are not proper subjects of insurance."  *Id.* at 344 (quoting 7 Couch on Insurance § 102.8.)  It was the Sixth Circuit's opinion in *Sequatchie*

*Concrete Services* that the doctrine would be adopted by the Tennessee Supreme Court if the case had been brought before it. *Id.* at 344-45. The doctrine's "basic premise is that insurance policies are intended to protect insureds against risks of loss; not losses that have already taken place or are substantially certain to occur." *State Auto. Mut. Ins. Co. v. R.H.L., Inc.*, No. 07-1197, 2010 WL 909073, at *4 (W.D. Tenn. Mar. 12, 2010). "Accordingly, the doctrine is properly invoked when the insured knows about the claimed loss before the policy is purchased." *Id.* (quoting *New Hampshire Ins. Co. v. Knoxville Cast Stone, Inc.*, 433 F. Supp. 2d 879, 884 (E.D. Tenn. 2004)) (internal quotation marks omitted). The doctrine "may apply where the insured has subjective knowledge of the damages that could underlie a legal claim against it." *Sequatchie Concrete Servs.*, 441 F.3d at 346.

Evanston maintains that the doctrine acts as a bar to coverage because Dr. Wright knew of the incident shortly after it occurred and received and reviewed Moat's March 1, 2018, letter. However, it is undisputed that Wright did not forward the letter to Carter, who did not see it until 2019. She testified in her deposition that she did not do so because, based on her conversations with Whitehead and VUMC's clinical coordinator, she did not believe a threat of loss existed.

Viewing the evidence in the light most favorable to the nonmovant—Union—the Court finds there is a question of fact as to whether the doctrine applies in this case. Defendant's motion is therefore DENIED as to the known loss/loss-in-progress doctrine.

### *Bad Faith Claim and Application of Contractual Liability Exclusion to Coverage of Demand by VUMC for Indemnity*

Defendant seeks summary judgment on Plaintiff's bad faith claim. It further argues that, even if the Policy was triggered as to a claim by Union arising from VUMC's demand for indemnity pursuant to the Agreement, such a claim would be barred by the Policy's Contractual

Liability Exclusion.  A ruling on these issues, however, must await the factfinder's determination on the estoppel issue and will be HELD IN ABEYANCE.

<em>CONCLUSION</em>

For the reasons set forth herein, the motion of the Plaintiff for summary judgment is DENIED and the Defendant's motion for summary judgment is DENIED IN PART, GRANTED IN PART, AND HELD IN ABEYANCE IN PART.  Plaintiff is DIRECTED to refile D.E. 64 in accordance with this order.

IT IS SO ORDERED this 19th day of February 2022.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE